**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MICHAEL SCHROEHER,

                Plaintiff,

                                **REPORT AND**
                                <u>**RECOMMENDATION**</u>

      - against -

UNITED PARCEL SERVICE BUSINESS         CV 06-4113 (SJF) (AKT)
TRAVEL ACCIDENT INSURANCE PLAN,
and LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                Defendants.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    <u>P</u>RELIMINARY <u>S</u>TATEMENT**

      Plaintiff Michael Schroeher commenced this action against Defendants United Parcel

Service Business Travel Accident Insurance Plan (the "Accident Plan"), United Parcel Service

Income Protection Plan (the "Protection Plan"), United Parcel Service of America, Inc. ("UPS"),

and Life Insurance Company of North America ("LINA") by filing a Complaint on August 18,

2006.  By Order dated May 15, 2007, the Court "so ordered" the parties' stipulation dismissing

Plaintiff's claims against Defendants UPS and the Protection Plan [DE 29].  Remaining before

the Court is Plaintiff's claim that he was wrongfully denied benefits pursuant to the Accident

Plan issued by LINA, in violation of the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. § 1001, *et seq*. ("ERISA").

      Plaintiff has filed a motion for summary judgment [DE 42] seeking certain relief

demanded in the Complaint as well as a determination that:  (1) Plaintiff was rendered "totally

and permanently disabled" as defined by the Accident Plan and the terms of the Blanket Accident

Policy, No. ABL 65 45 87 (the "Blanket Accident Policy") issued by LINA; (2) Plaintiff became

totally disabled on April 14, 2000 as a result of an accident covered by the Accident Plan and the

Blanket Accident Policy issued by LINA; and (3) Plaintiff is entitled to benefits in the amount of

$400,000 in accordance with the terms of the Accident Plan and the Blanket Accident Policy

issued by LINA, together with interest, costs, and attorneys' fees [DE 42].  Judge Feuerstein has

referred the matter to me for a Report and Recommendation.

Subsequently, Defendants LINA and the Accident Plan filed a cross-motion for summary

judgment seeking dismissal of the remaining allegations in the Complaint [DE 47].  In the Cross-

Motion, Defendants assert that (1) Plaintiff failed to exhaust his administrative remedies; (2) the

appropriate standard of review is the deferential "arbitrary and capricious" standard;

(3) Plaintiff's injury is not covered under the Blanket Accident Policy; and (4) Plaintiff's

accident did not occur while Plaintiff was traveling on company business.  For the reasons that

follow, I respectfully recommend to Judge Feuerstein that Plaintiff's Motion for Summary

Judgment be DENIED and Defendants' Cross-Motion for Summary Judgment be DENIED.

## II.    BACKGROUND

The following facts are undisputed by the parties unless otherwise noted.  Plaintiff resides

in Coram, New York.  He began working for UPS on October 11, 1988.  Between that date and

April 14, 2000, Plaintiff's job title was "Feeder On-Road Supervisor/Manager and Feeder

Dispatch Supervisor/Manager."  Plaintiff stopped working for UPS on April 14, 2000 and claims

that this work cessation was due to his "total and permanent disability."  Pl.'s Rule 56.1 Stmt. of

Material Facts in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s 56.1 Stmt.") ¶ 8.

The Accident Plan is an employee benefit welfare plan, as that term is defined under ERISA, which provides benefits to employees of UPS who suffer an injury while traveling. UPS is the Plan Administrator of the Accident Plan and LINA is the claims administrator and insurer for the Accident Plan.[1] LINA pays benefits under the Accident Plan pursuant to the terms of the Blanket Accident Policy. The Blanket Accident Policy provides that such benefits will be paid under the following circumstances:

a)      a person is injured by one of the types of accidents described in Schedule IV, which happens while he is covered for this benefit; and

b)      he becomes totally disabled as a direct result, and from no other cause, within 30 days of the accident; and

c)      he remains totally disabled for 12 straight months; and

d)      he is then permanently and totally disabled.

\*      \*      \*

A person will be deemed "totally disabled" if he can not do all the substantial and material duties of his type of work. He will be deemed "permanently and totally disabled" if he is not able to do any work for which he is or may become qualified by reason of his education, experience or training; and if he is not expected to be able to do any such work for the rest of his life.

Aff'n of Paul M. Kampfer, Esq. in Supp. of Pl.'s Mot. for Summ. J. ("Kampfer Aff'n"), Ex. B

---

[1]     The parties agree that "LINA is a wholly owned subsidiary of CIGNA Group Insurance, but it was CIGNA that administered Plaintiff's claim." Pl.'s Rule 56.1 Stmt. ¶ 6, Defs.' Rule 56.1 Stmt. of Material Facts in Supp. of Defs.' Cross-Motion for Summ. J. ("Defs.' Rule 56.1 Counter Stmt.") ¶ 6.

at 7. The Blanket Accident Policy provides several exclusions from the payment of benefits and states "[t]his is an accident only policy. We will not pay benefits for loss caused by or resulting from illness, disease, or bodily infirmity." *Id.*, Ex. B at 8.

In support of the motion, Plaintiff's counsel has provided a booklet containing the Summary Plan Description ("SPD") of the UPS Business Travel Accident Insurance Plan. According to the SPD, the Accident Plan provides for benefits in the following circumstances:

> If while traveling on Company business you have an accident that results in death, dismemberment, paralysis or total and permanent disability, your policy provides for payment of benefits to you or your beneficiary. To be covered by the Plan, your death, dismemberment or paralysis must result within one year from the date of the accident. Total and permanent disability must begin within 180 days of the accident and continue for at least 12 consecutive months.

Kampfer Aff'n, Ex. C at 1.

Plaintiff contends that on April 14, 2000, he attended a UPS Supervisor Appreciation Day outing at "Sports Plus" located in Lake Grove, New York. Pl.'s Rule 56.1 Stmt. ¶ 37. According to Plaintiff, during this outing, he "fell down while bowling and injured his back." *Id.* Plaintiff further contends that he "timely applied for benefits under the Accident Policy." *Id.* ¶ 39. It is not clear from the administrative record the exact date on which Plaintiff applied for such benefits and, indeed, it is unclear exactly when Plaintiff submitted his application for benefits. Nevertheless, the administrative record reveals that LINA processed Plaintiff's claim for benefits under the Accident Plan.

By letter dated March 8, 2004, LINA informed Plaintiff that it had reviewed his claim for benefits under the Accident Plan and had determined "that benefits are not payable." AR at 301.[2] The March 8, 2004 letter summarized LINA's reasons for denying Plaintiff's claim, as follows:

> We have reviewed the documents detailed above and the claim file as a whole in making this determination. According to the consultations, test results and assessments we have received, you have been treating for low-back radicular symptoms since at least 1998. There are a few assessments which indicate that the start of your lumbar condition was as early as 1991 or 1993. It is documented in several reports that you injured your back lifting a dolly in 1998. It is also confirmed that you continued working after each of these instances.
>
> As stated above, in order for your claim to be approved, you must satisfy all of the policy provisions. There is no evidence to support that the activity on April 14, 2003 [*sic*] was the sole cause of your current medical condition. As such, there is no exact date of accident in relation to your condition. Moreover, there is evidence to support that the reported activity of April 2003 [*sic*] caused an exacerbation of a low-back pain syndrome that you have had since at least the mid-1990's. Under these circumstances, no benefits can be paid under policy ABL 654287.

*Id.* at 303.

The March 8, 2004 letter further stated that Plaintiff could appeal the decision and specified that:

> The appeal must be in writing, submitted within 60 days of the date you receive this letter and must contain the following information:
>
> • the reason for the appeal and/or disagreement,
>
> • the insured's name and social security number, and

[2] This reference and all subsequent citations designated "AR" refer to the administrative record maintained by LINA with respect to Plaintiff's claim for benefits under the Accident Plan. The administrative record is attached as Exhibit C to Defendants' Rule 56.1 Statement in Support of Defendants' Cross-Motion for Summary Judgment.

- information needed to support that the bowling activity was the sole cause of your injury and not an exacerbation of a pre-existing medical condition.

*Id*. Whether Plaintiff complied with the procedures to appeal LINA's denial of benefits under the Accident Plan is in dispute. Notwithstanding that dispute, Plaintiff filed his Complaint in federal court on August 18, 2006.

## III.   STANDARD OF REVIEW

In reviewing a motion for summary judgment, the Court is guided by the tenets set forth in Federal Rule 56(c) which provide that: "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006); *Gray v. Lutheran Soc. Serv. of Metro. NY, Inc.*, No. 04 CV 2843, 2006 WL 1982859, at * 3 (E.D.N.Y. July 13, 2006). The moving party bears the burden of meeting this exacting standard, and in order to determine whether the moving party has satisfied this burden, the Court must view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997).

To defeat a summary judgment motion, the non-movant must proffer affidavits, depositions, or other documentation setting forth specific facts to demonstrate that there exists a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

The non-moving party must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), and may not rely on allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

When deciding a cross-motion for summary judgment, "the standard is the same as that for individual motions for summary judgment. The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Rosco, Inc. v. Mirror Lite Co.*, 506 F. Supp. 2d 137, 152 (E.D.N.Y. 2007) (quoting *Palmiotti v. Metro. Life Ins. Co.*, 423 F. Supp. 2d 288 (S.D.N.Y. 2006) (internal citation omitted)); *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## IV.    THE PARTIES' CONTENTIONS

### A.    Scope of Review

In support of his motion for summary judgment,[3] Plaintiff contends that the denial of benefits under the Accident Plan should be reviewed under a *de novo* standard. Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 7-8. Plaintiff concedes that the Accident Plan's SPD granted discretion to UPS, as the plan administrator, to determine benefit eligibility. *Id.* at 8. However, Plaintiff argues that LINA (the claims administrator) -- not UPS -- made the determination regarding Plaintiff's eligibility for benefits. According to Plaintiff, "UPS never exercised its discretion and there is, therefore, no decision by the Plan Administrator to which the

---

[3]    Plaintiff makes these same arguments in opposition to LINA's Cross-Motion for Summary Judgment. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Cross-Motion for Summ. J. ("Pl.'s Opp'n") at 5-6.

Court can defer." *Id.* at 11.  Plaintiff further maintains that although UPS had the authority to delegate its discretionary powers to another entity, such as LINA, UPS "never explicitly or implicitly exercised its power of delegation." *Id.*  Plaintiff asserts "it cannot be assumed that, because the Plan Administrator had been granted discretionary authority, such authority is automatically transferred to the Claim Administrator, LINA." *Id.*  Plaintiff argues that the SPD does not contain language demonstrating a "clear delegation of that authority to LINA." *Id.*

Aside from arguing the proper standard of review, Plaintiff claims that he is entitled to benefits under the Accident Plan because (1) the April 14, 2000 incident was a covered accident under the terms of the Plan, and (2) Plaintiff's total disability occurred as a direct result of that incident and from no other cause.  According to Plaintiff, since the accident took place away from the employer's premises and the trip to Sports Plus was "both sponsored and mandated" by UPS, Plaintiff was "on business" for UPS and such trip falls within the definition of "Hazards Insured Against" in the Accident Policy.  Pl.'s Mem. at 13.  Likewise, Plaintiff maintains that he became totally disabled as a direct result of the bowling injury and not from any other cause. *Id.* at 15.

In opposition to Plaintiff's Motion for Summary Judgment and in support of LINA's Cross-Motion for Summary Judgment, LINA contends that the appropriate standard of review in this case is "the deferential arbitrary and capricious standard."  Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") at 3; Defs.' Mem. at 9.  LINA asserts that (1) the SPD clearly granted UPS "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy"; (2) the SPD further granted UPS "the authority to delegate its administrative duties, including eligibility determinations, to

individuals or committees within UPS or to outside administrative services"; and (3) UPS delegated to LINA its "administrative duties," which duties included the ability to make eligibility determinations.  Defs.' Opp'n at 3, 4; Defs.' Mem. at 9.  Consequently, LINA maintains that the Court may review LINA's decision under the arbitrary and capricious standard and may only consider evidence contained within the administrative record.  Defs.' Opp'n at 5; Defs.' Mem. at 10.

With regard to the bowling incident itself, Defendants argue that this occurrence was not a "covered accident" under the Business Travel Accident Plan because Plaintiff was involved in a recreational outing with other UPS employees and clearly was not traveling on company business when the incident occurred.  Defs.' Opp'n at 6.  In addition, Defendants maintain that this bowling incident did not cause Plaintiff's back injury, but rather Plaintiff's condition was the result of prior back injuries and exacerbations of those injuries, all of which Defendants claim are documented in the Administrative Record.  *Id*. at 8.  Consequently, Defendants contend, Plaintiff did not become "totally disabled as a direct result, and from no other cause," other than the accident and, as such, is not covered by the Plan on that basis.  *Id*. at 10.

B.    **LINA's Denial Of Benefits To Plaintiff**

In reply in further support of his motion for summary judgment, Plaintiff contends that even if the Court finds it appropriate to apply the arbitrary and capricious standard in this case, LINA's denial of his benefits claim was arbitrary and capricious.  Pl.'s Reply Mem. of Law in Further Supp. of Mot. for Summ. J. ("Pl.'s Reply Mem.") at 1.  Specifically, Plaintiff asserts that LINA "imposed a standard not required" by the Blanket Accident Policy when it stated Plaintiff's eligibility turned on whether the accident was the sole cause of Plaintiff's "medical condition,"

rather than his "total disability." *Id.* Plaintiff asserts that LINA not only "impose[d] a higher eligibility standard than that which is called for by the [Blanket Accident Policy]," but that LINA also "interpret[ed] the plan in a manner inconsistent with its plain words." *Id.* Further, Plaintiff maintains that "LINA failed to follow the procedures contained in its Claims Manual and Guidelines" because LINA did not refer Plaintiff's claim to the Home Office for review. *Id.* at 2-3.

**C.    Exhaustion of Administrative Remedies**

In support of LINA's Cross-Motion for Summary Judgment, LINA asserts that Plaintiff's claim must be dismissed because Plaintiff failed to exhaust his administrative remedies. Defs.' Mem. of Law in Supp. of Cross-Mot. for Summ. J. ("Defs.' Mem.") at 7. LINA contends that Plaintiff was notified by letter dated March 8, 2004 that his claim had been denied. That letter also informed Plaintiff that he had sixty (60) days to file a written appeal of LINA's decision. *Id.* at 7. LINA states that it received a June 15, 2004 letter from Plaintiff's counsel requesting a copy of the Blanket Accident Policy and indicating that this document was necessary for Plaintiff to respond to the March 8, 2004 denial letter. *Id.* at 8. According to LINA, it provided a copy of the Blanket Accident Policy to Plaintiff, but "Plaintiff, to date, has not sent a letter requesting an appeal nor has he offered any defense claiming that an administrative appeal would be futile." *Id.*

In opposition, Plaintiff argues that letters sent to LINA dated July 7, 2004, August 24, 2004, and April 4, 2005[4] should "be considered appeals of LINA's March 8, 2004[ ] denial letter" because they "specifically questioned the basis of LINA's denial of Plaintiff's claim and

---

[4]    These letters do not appear in the administrative record provided to the Court.

they advised LINA that Plaintiff was unable to provide an adequate basis for Mr. Schroeher's appeal without the clarification of the issues raised." Pl.'s Mem. of Law in Opp'n to Defs.' Cross-Mot. for Summ. J. ("Pl.'s Opp'n") at 2. Plaintiff contends that because LINA failed to respond to these letters, Plaintiff had no option but to commence this lawsuit. *Id.* at 3.

In the alternative, Plaintiff claims that any appeal would have been futile. Plaintiff asserts that his claim "was erroneously denied" based on the existence of his "prior back injury," and "no matter how many times Plaintiff would have appealed this denial, his claim would have still been denied because he had a prior back injury (*e.g.*, a pre-existing back condition). *Id.* at 4.

LINA denies that it ever received Plaintiff's letters dated July 7, 2004, August 24, 2004, or April 4, 2005, but LINA notes that these letters "are characterized in the Complaint not as appeal letters but as letters seeking clarification of issues in the denial letters." Defs.' Opp'n at 8. Moreover, LINA contends that Plaintiff has not made a valid showing of futility because he has failed to show that he made a "sincere attempt to resolve these issues prior to commencing litigation." Defs.' Reply to Pl.'s Mem. of Law in Opp'n to Cross-Mot. for Summ. J. ("Defs.' Reply Mem.") at 4.

**V.    DISCUSSION**

**A.    Exhaustion of Remedies**

The ERISA statute, 29 U.S.C. § 1133, "requires adequate written notice of the denial of claims as well as a reasonable opportunity for a full and fair review of the denial." *Infantolino v. Joint Indus. Bd. of the Elec. Indus.*, No. 06 CV 00520, 2007 WL 879415, at *4 (E.D.N.Y. Mar. 15, 2007). The statute provides as follows:

In accordance with the regulations of the Secretary, every employee benefit plan shall –

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

The regulations implementing this statute provide that "[e]very employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)." 29 C.F.R. § 2560.503-1(b) (2008).

The Second Circuit has adopted "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). If, however, an ERISA plan does not comply with ERISA's claim procedures, including procedures governing the appeal of adverse benefit determinations, the regulations provide that a claimant's administrative remedies are deemed exhausted. Specifically, the regulations set forth the "deemed exhausted" provision as follows:

In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l). The phrase "requirements of this section," as used in the "deemed

exhausted" provision, includes the requirement that a claimant be provided with an appropriate

opportunity for appeal. *See Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 n.7 (2d Cir.

2006) (citing 29 C.F.R. § 2560.503-1(h)).

With respect to a claimant's appeal of adverse benefit determinations, such as a

determination that a claimant is not eligible to receive certain benefits,[5] the regulations require an

ERISA plan to:

> establish and maintain a procedure by which a claimant shall have a
> reasonable opportunity to appeal an adverse benefit determination to
> an appropriate named fiduciary of the plan, and under which there
> will be a full and fair review of the claim and the adverse benefit
> determination.

29 C.F.R. § 2560.503-1(h)(1). When an ERISA plan provides disability benefits, that plan will

not "be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a

claim and adverse benefit determination" unless the plan complies with numerous requirements.

29 C.F.R. § 2560.503-1(h)(4) (noting plan must meet requirements set forth in subparagraphs

(h)(2)(ii) through (iv) as well as (h)(3)(i) through (v) of this section). For purposes of the present

motion, the most important requirement is that the plan provide the claimant with at least 180

days following the claimant's receipt of a notification of an adverse benefit determination to

appeal that determination. 29 C.F.R. § 2560.503-1(h)(3)(i).[6]

---

[5]      *See* 29 C.F.R. § 2560.503-1(m)(4).

[6]      The prior version of this regulation required only that the claimant be provided with 60
days to appeal an adverse benefit determination. *See* 29 C.F.R. § 2560.503-1(g)(3) (2000). The
current version of the regulations discussed above, however, applies to claims filed under a plan
on or after January 1, 2002. 29 C.F.R. § 2560.503-1(o) (2008). The parties do not provide the
Court with the specific date on which Plaintiff's claim for benefits under the Accident Plan was

The March 8, 2004 denial of benefits letter sent to Plaintiff informed him of his right to appeal and stated that "[t]he appeal must be in writing, submitted *within 60 days* of the date you receive this letter . . . ." AR at 303 (emphasis supplied). Thus, even though the regulations required that Plaintiff be provided with 180 days to appeal LINA's decision to deny him benefits, there is nothing in the record to establish that Plaintiff was ever provided with more than 60 days.

The Court finds that LINA's failure to comply with the regulations in this instance triggers the application of the "deemed exhausted" provision. In analyzing the applicability of the "deemed exhausted" provision in a different context, the Second Circuit has noted that

> [t]he "deemed exhausted" provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court . . . Indeed, in describing the rationale behind the "deemed exhausted" provision, the Notice of Proposed Rulemaking stated that "claimants denied access to the statutory administrative review process . . . should be entitled to a full and fair review of their claims in the forum in which they are *first* provided adequate procedural safeguards."

*Eastman Kodak Co.*, 452 F.3d at 222-23 (quoting ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedures, 63 Fed.Reg. 48390, 48397 (proposed Sept. 9, 1998) (codified at 29 C.F.R. pt. 2560)) (second alteration and emphasis in original).

Here, LINA's requirement that Plaintiff file an appeal within 60 days conflicts with the plainly stated terms of the revised regulations, which require that Plaintiff be given 180 days to file an appeal. "Therefore, [LINA] has failed to establish claims procedures consistent with the

_____

filed. Moreover, the Court's review of the Administrative Record did not uncover Plaintiff's actual claim form. However, in an April 14, 2003 letter, LINA denied Plaintiff's request to consider prior communications from his counsel as "notice of claim." AR at 217. Accordingly, the Court concludes that Plaintiff's claim was filed on or after January 1, 2002 and, therefore, the current version of the regulation applies.

requirements of § 2560.503-1," which includes providing a claimant with 180 days to appeal a denial of benefits from a plan providing disability benefits. *See Infantolino*, 2007 WL 879415 at *6.

In light of this information, the Court deems Plaintiff to have exhausted his administrative remedies. *See id.* (deeming claim to be exhausted when the ERISA plan at issue failed to follow claims procedures that met the requirements set forth in the regulations); *Linder v. BYK-Chemie USA, Inc.*, 313 F. Supp. 2d 88, 94 (D. Conn. 2004) ("[T]he regulation is unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted.") (collecting cases); *accord Martinez-Claib v. Bus. Men's Assurance Co. of Am.*, No. 2:06-cv-479, 2008 WL 899294, at *6 (M.D. Fla. Mar. 31, 2008) (finding that due to the plan's failure to adhere to the regulations, "Plaintiff is deemed to have exhausted her administrative remedies").

**B.    Scope of Review**

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (internal quotation marks omitted). The Supreme Court, however, has made clear that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If such discretion is given, a district court must review the administrator's denial of benefits deferentially, and may reverse only if the administrator's decision was arbitrary and capricious." *Allison v. Unum Life Ins. Co.*, CV 04-0025, 2005 WL

1457636, at *3 (E.D.N.Y. Feb. 11, 2005) (citing *Fay*, 287 F. 3d at 104); *see also Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (a denial of benefits that is subject to an arbitrary and capricious standard of review "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law'") (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). When a plan does not grant discretionary authority, a district court "reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*." *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 98 (2d Cir. 2003).

"The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler*, 181 F.3d at 249 (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)). Ambiguity in the policy should be resolved against the administrator. *Kerestan v. Merck & Co. Long Term Disability Plan*, 05 CV 3469, 2007 WL 4241951, at *2 (S.D.N.Y. Mar. 23, 2007) (citing *Kinstler*, 181 F.3d at 252).

Although it is not necessary to use "magic words" such as "discretion" or "deference" in order to trigger the deferential arbitrary and capricious standard of review, "[c]ourts should require clear language and decline to search in semantic swamps for arguable grants of discretion." *Kinstler*, 181 F.3d at 252 (courts may apply the arbitrary and capricious standard only when "the policy language reserving discretion has been clear"); *see also Fay*, 287 F.3d at 104. "Thus, in general, 'the administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the

[claim] administrator or language that is plainly the functional equivalent of such wording.'"

*Kerestan*, 2007 WL 4241951, at *2 (quoting *Kinstler*, 181 F.3d at 252).

The issue to be decided here is whether LINA's decision to deny LTD benefits to Plaintiff is subject to *de novo* review (as Plaintiff claims), or the "arbitrary and capricious" standard of review (as Defendants claim).  As discussed below, the answer turns on whether UPS delegated its discretionary authority to LINA.  Defendants assert that such delegation did occur pursuant to the SPD,[7] while Plaintiff claims it did not.  Accordingly, the Court turns to the SPD as the starting point for its analysis.  *See Allison*, 2005 WL 1457636, at *6.

### 1.	Conferral Of Discretion Under The SPD

The parties agree that with regard to the Accident Plan, UPS was the Plan Administrator and LINA was the Claims Administrator and insurer.  Similarly, the parties agree that under the SPD, UPS as the Plan Administrator had discretion to determine benefit eligibility.  Pl.'s Mem. at 8.  The SPD provides in pertinent part that

> UPS has the **exclusive right and discretion** to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation, **including questions pertaining to eligibility for and the amount of benefits to be paid by the Plan**.

Kampfer Aff'n, Ex. C at 8 (emphasis added).  The language is very clear here -- UPS has the "**exclusive**" right and discretion to interpret the Plan -- meaning that such authority is reserved/restricted to UPS itself.  Likewise, the SPD confers upon UPS as the Plan Administrator

---

[7]	It should also be noted that the SPD was the only document provided to Plaintiff prior to his injury (the Blanket Accident Policy was not provided until June 15, 2004, well after LINA had denied Plaintiff's application for benefits), and was the document upon which Plaintiff relied when he submitted his claims.  Kampfer Aff'n ¶¶ 5, 6; Schroeher Aff. ¶ 15.

the authority to "interpret the terms and conditions of the Plan," which would thus "trigger a deferential standard of review of any interpretation of the [Accident Plan] that [UPS], as Plan Administrator, conducted." *See Allison*, 2005 WL 1457636, at *5.

However, UPS did not actually engage in any interpretation of the Accident Plan with respect to Plaintiff's claim. Rather, as the parties have agreed, it was LINA, as Claims Administrator, which made the decision whether Plaintiff was eligible for benefits under the Plan.

### 2. *UPS's Authority To Delegate Its Discretion Under The SPD*

Regarding UPS's authority to delegate its discretion, the SPD provides as follows:

> The Plan Administrator is United Parcel Service, which is **authorized to delegate its administrative duties** to one or more individuals or committees within UPS, or to one or more outside administrative services providers. Presently, certain **administrative services** with regard to the **processing of claims** and the **payment of benefits** are provided under contract by the Life Insurance Company of North America.

Kampfer Aff'n, Ex. C at 9 (emphasis added). Although the policy itself is silent on the issue of discretionary authority, Plaintiff concedes that the SPD "contains a grant of discretion to UPS as the plan administrator." Pl.'s Mem. at 8, 10. Plaintiff argues, however, that such discretionary authority is not given to LINA. *Id*. at 10. Having reviewed the specific wording of the SPD, the Court notes that the document, by its terms, does not expressly authorize delegation of the "exclusive right and discretion to interpret the terms and conditions of the Plan." Rather, the SPD only authorizes UPS "to delegate its ***administrative duties*** . . . " -- it does not explicitly delegate discretion to determine a Plan participant's eligibility for benefits (emphasis added). The Plan does not define "administrative duties." However, in the very next sentence of the

paragraph at issue, the SPD refers to "administrative services" provided by LINA in "processing claims" and "paying benefits." It is logical to conclude from the words used here that the "administrative services" provided by LINA included these two latter components (*i.e.*, processing claims and paying benefits) -- services which LINA provided as a contract vendor to UPS.

There is no indication of the duration of LINA's contract with UPS, or the extent to which the contract encompassed "administrative duties" beyond "the processing of claims and the payment of benefits." There is no specification that the term "administrative duties" includes eligibility determinations, or whether the "administrative duties" LINA performed extended beyond the two specified in the SPD. The parties obviously disagree whether UPS actually delegated its discretion to make eligibility determinations to LINA. The applicable standard of review -- *i.e.*, whether the Court reviews the denial of benefits to Plaintiff under the "arbitrary and capricious" or *de novo* standard -- turns on whether UPS delegated its discretion to determine Plaintiff's benefits eligibility to LINA.

Plaintiff contends that *de novo* review is appropriate because there was no express delegation of discretionary authority from UPS to LINA. Defendants counter that the Plan authorizes UPS

> to delegate its administrative duties, including eligibility determinations, to individuals or committees within UPS or outside administrative services with regard to processing of claims for benefits under the policy issued by LINA[,] . . . [UPS] delegated its administrative duties to LINA. Therefore, with UPS's grant of authority, LINA now has the exclusive right and discretion to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation.

Defs.' Mem. at 9 (citing AR at 0494).  In other words, Defendants argue that because the Plan allows UPS to delegate the authority to make eligibility determinations and, in the present case, LINA actually made such a determination, UPS must therefore have delegated such decision-making authority.[8]

The Court disagrees.  The SPD contains no express delegation of authority to LINA.  In fact, the SPD language, quoted verbatim at the beginning of this section, speaks of *processing* claims and *paying* benefits, but says nothing expressly about delegating eligibility determinations nor giving LINA any exclusive right and discretion to interpret Plan terms.  *See Kerestan*, 2007 WL 4241951, at *2 (holding that *de novo* standard of review applied where Defendants had "failed to identify any explicit language actually delegating this [decision-making] authority").  Contrary to Defendants' arguments, the fact that LINA was authorized to process Plaintiff's LTD benefits claim, and in fact did so, does not constitute a discretionary delegation.  *See id.* (citing *Kinstler*, 181 F.3d at 252 (distinguishing between decision-making and discretionary authority)).

### 3.   *Further Examination Of The SPD*

SPDs are important documents in the context of ERISA disputes, as employers are required to distribute SPDs describing plan benefits to their employees, *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003) (citing 29 U.S.C. §§ 1022(a); 1024(b)), and to file the SPDs with the Secretary of Labor.  *See* 29 U.S.C. § 1021(b)(2); *see also Heidgerd v. Olin Corp.*, 906 F.2d 903, 905 (2d Cir. 1990).  The SPD must contain "the plan's

---

[8]    The Court notes that Defendants do not make clear the means by which the delegation was achieved -- *i.e.*, whether the delegation was accomplished via the terms of the SPD, or whether there was a separate delegation, such as in a written memorandum.  However, the Court need not seek further clarification on this point because Defendants have presented no evidence of any explicit delegation.

eligibility requirements for benefits as well as 'the circumstances which may result in disqualification, ineligibility or denial or loss of benefits.'" *Kinstler*, 181 F.3d at 252 (2d Cir. 1999) (quoting 29 U.S.C. § 1022(b) & citing 29 C.F.R. § 2520.102-3(t)(1)). Moreover, the SPD "must be written in a manner calculated to be understood by the average plan participant and must be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the plan." *Burke*, 336 F.3d at 110 (citing 29 U.S.C. § 1022(a)).

Keeping these standards in mind, the Court finds that the Accident Plan SPD does not apprise Plan participants and beneficiaries of the prospect that their benefits eligibility will be decided by LINA, not UPS. The SPD does not state that LINA will have sole discretion or that LINA will determine eligibility at all. Early on in the document, under the heading "Who Is Covered," the SPD states only that benefits from the Plan are "provided by means of an insurance contract through the Life Insurance Company of North America . . . ." Kampfer Aff'n, Ex. C at 1. Subsequently, under the heading "Reporting A Claim," the SPD directs UPS District Human Resources managers to report any claims for Plan benefits immediately to UPS's Corporate Benefits office, which will in turn advise the Corporate Risk Management Department at UPS. At that point, Risk Management will help the employee or his/her beneficiary "initiate the necessary steps for completion of claim forms and will help file them with the insurance carrier." *Id.* at 4.

In describing what happens if a claim is denied, the SPD never states from whom the notification of the denial will come. *Id*. at 5. However, employees are advised of their right to a review and are directed to UPS's Human Resources department to discuss the issue. *Id.* If the employee wishes to request further review, he/she may do so in writing to the Human Resources

department, which will send the request to the Corporate Benefits department for a review of the denial. *Id.* Nowhere in this procedure is LINA mentioned. In the concluding paragraph of the SPD, employees are advised that if they have any questions about the Plan, "[y]our first line of information is your district Human Resources department. If you need more information, contact the Plan Administrator, the UPS Corporate Benefits office in Atalanta, Georgia." *Id.* at 9. None of the procedures involve LINA. The only mention of LINA is on the last substantive page of the document, previously referenced by the Court, where UPS states that it is the Plan Administrator and that the processing of claims and payment of benefits are handled pursuant to UPS's contract with LINA. *Id.* Significantly, while the SPD defines UPS as the "Plan Administrator," there is no mention of the existence of a separate "Claims Administrator," or of any role LINA would pay in determining eligibility for benefits.[9] *See Allison*, 2005 WL 1457636 at *6. Nonetheless, the parties do not dispute that LINA is the entity which made the eligibility determination in this case.

As support for his argument that the Court should apply a *de novo* standard of review, Plaintiff relies upon *Allison v. UNUM Life Insurance Company* for the proposition that where the reservation of discretion to the Plan Administrator is clearly set forth in the SPD, but the entity with discretion -- UPS in this instance -- does not exercise that discretion, "and the entity that decided the claim -- [LINA] -- is not plainly given discretion to do so," the Court should find that the claim administrator is not entitled to deferential review. Pl.'s Mem. at 10-11 (citing *Allison*, 2005 WL 1457636, at * 8 (citation omitted)).

---

[9]      Given the SPD's use of clear language to confer discretionary authority upon UPS, the Court must conclude that, had UPS intended to confer the same authority upon LINA, or to delegate UPS's authority to LINA, UPS certainly knew how to do so.

Defendants assert that *Allison* is distinguishable from the instant case because the SPD in *Allison* did not mention the existence of a claim administrator separate and apart from the employer plan administrator. Defs.' Mem. at 4. Although Defendants are correct that LINA is described in the SPD as the company which processes claims and pays benefits, Defendants side-step the omission of any express delegation of ***discretion*** to LINA by UPS. The Court finds Defendants' arguments to miss the mark. Much like the circumstances in *Allison*, it was the Claims Administrator, LINA, which made all of the decisions here regarding Plaintiff's eligibility for benefits, not UPS as the Plan Administrator. UPS does not contest this fact. Defs.' Rule 56.1 Counter-Stmt. ¶ 40.

Moreover, the Court finds the reasoning in *Allison*, in closely comparable circumstances, to be persuasive:

> The parties agree that First Unum determined Allison's claim. The defendants state that First Unum's authority to decide claims derives from the policy and the certificate, and that CA, "in purchasing the Policy to be part of the LTD Plan, appointed First Unum claim administrator, with full authority from CA to decide plaintiff's claim." The defendants' suggestion is either that the language in the policy/certificate directly gives discretion to First Unum, or that the discretion reserved to CA in the SPD was transferred to First Unum as "claim administrator," or perhaps that First Unum somehow acted as CA's agent, exercising the discretion given to CA in the SPD. In any event, the defendants argue, an arbitrary and capricious standard applies to First Unum's benefit denial.
>
> While the court does not dispute First Unum's authority to decide the claim, it does not agree that any discretion was given or transferred to First Unum so as to trigger a deferential standard of review, for two reasons. First, the SPD, and not the policy or certificate, is the controlling document, and it does not confer discretion on First Unum or transfer CA's discretion to First Unum. Second, even if considered, the language in the policy and certificate is insufficient to

confer or transfer discretion. The court looks first to the SPD, which
is the controlling document regarding ERISA plans.

*Allison*, 2005 WL 1457636 at * 5-* 6.  Here, both parties agree that the SPD granted discretion to

UPS to determine benefit eligibility.  It is also undisputed that LINA, the claim administrator,

denied Plaintiff's claim for benefits, not UPS.  However, the SPD does not transfer UPS's

discretion to LINA.  The language is simply insufficient to transfer such discretion –

"administrative duties" and "discretionary authority" are not interchangeable terms.  Like *Allison*,

UPS as the Plan Administrator here did not avail itself of the "relative ease with which ERISA

plans may be worded explicitly" to "insulate all aspects of [its] decisions from de novo review.'"

*Allison*, 2005 WL 1457636, at *8 (quoting *Kinstler*, 181 F.3d 243, 251 (2d Cir. 1999)).

### 4.      *Analysis of Relevant Case Law*

Existing case law in the Second Circuit further supports the Court's finding that the SPD

does not provide for the explicit transfer of decision-making/discretionary authority from UPS to

LINA in the instant case.  This Court's analysis of cases involving the issue of delegation of

discretionary authority reveals that the "[c]ases where delegation has been found to exist have

involved much clearer language than what is contained in the SPD at issue."  *Kerestan*, 2007 WL

4241951, at *3 (citing *Winkler v. Metropolitan Life Ins. Co.,* No. 03 Civ. 9656, 2004 WL

1687202, at *1 (S.D.N.Y. Jul. 27, 2004)).

A compelling argument for *de novo* review in the instant case is found in *Kerenstan*.

There, Merck was the plan administrator and MetLife was the claim administrator.  Like *Allison*

and the instant case, there was no dispute in *Kerenstan* that Merck could delegate its

24

discretionary authority to others to decide benefit claims under the plan at issue, including to

MetLife as the claims administrator.  Id. at * 2.  The SPD at issue in *Kerenstan* provided that

> [t]he Plan Administrator for the LTD Plan is [Merck].
> Administration of the LTD is the responsibility of the plan
> administrator.  The Claims Administrator ***determines eligibility for***
> ***benefits*** under the LTD Plan in accordance with the official LTD Plan
> document(s) . . . .

*Kerestan*, 2007 WL 4241951,  at *1 (emphasis added).  Thus, the SPD in *Kerenstan* defined in

more specific language that that at issue in the instant case that the claims administrator was

authorized to make eligibility determinations.   The SPD further provided that Merck, as the plan

administrator, had the exclusive discretionary authority to

> Construe and interpret the provisions of the LTD Plan; Make factual
> determinations; Decide all questions of eligibility for benefits;
> Determine the amount of such benefits; [and] Resolve issues arising
> in the administration, interpretations, and/or application of the LTD
> Plan.
>
> ****
>
> [Merck's] decisions on such matters are final and conclusive.
> [***Merck], as plan administrator, has reserved the right to delegate***
> ***all or any portion of its discretionary authority described in the***
> ***preceding sentence to a representative (e.g. claims administrator)***
> ***and such representative's decision of such matters are final and***
> ***conclusive. Any interpretations or determinations made pursuant***
> ***to such discretionary authority of the plan administrator or its***
> ***representative will be upheld*** in judicial review unless it is shown
> that the interpretation or determination was an abuse of discretion.
>
> \*     \*     \*
>
> The Plan Administrator has the discretion to construe and interpret
> the terms of the LTD Plan as follows: . . .
>
> Except as delegated to the claims administrator, to make factual
> determinations, interpret and construe the plan, correct defects, supply
> omissions and reconcile inconsistencies to the extent necessary to

25

> effectuate the plan, resolve all questions arising in the administration interpretation and application of the plan, and such action shall be conclusive upon the Company, the employees, their dependants, and beneficiaries; [and]
>
> Except as delegated, to decide all questions of eligibility and participation.

*Id.* at * 1-* 2 (emphasis added). Thus, the SPD at issue in *Kerestan*, like the UPS SPD, conferred upon the plan administrator discretionary authority to make eligibility determinations. Unlike the UPS SPD, however, the SPD in *Kerenstan* expressly reserved Merck's right to delegate "all or any portion of its discretionary authority" to certain other entities, including MetLife, the claims administrator. *Id.* The SPD in *Kerestan* was even more explicit in that it specifically stated that the authority to "interpret and construe the plan" and "decide all questions of eligibility and participation" was conferred upon the plan administrator "[e]xcept as delegated to the claims administrator." *Id.* Notwithstanding this specificity, the Court determined that there was no evidence that Merck, as the plan administrator, had actually delegated its authority to MetLife. *Id.* at * 2-* 3. Finding that the *de novo* standard of review applied, Judge Jones provided the following rationale:

> While a close call, the Court sides with Plaintiff. The SPD contains no express delegation of authority to MetLife. Indeed, the SPD expressly provides that Merck "reserves" is discretionary authority . . . and affords Merck "exclusive" discretion to decide claims, "except as delegated to" MetLife. . . . The Defendants have failed to identify any explicit language actually delegating this authority. Contrary to Defendants' assertion, the fact that MetLife was authorized to decide Plaintiff's claim – and in fact did so – does not amount to a discretionary delegation. . . .
>
> In sum, any delegation of discretionary authority to MetLife under the SPD must be inferred. But Defendants cannot meet their burden through leaps in logic; even reasonable ones."

*Id.* at * 3 (citing *Kinstler*, 181 F.3d at 251-52).

If *Kerenstan* warranted a finding that the *de novo* standard applied, despite particularized language which the Court nonetheless still found lacking, then no less result can be reached here, where the language used is significantly more generalized. LINA, as the Claim Administrator, is not plainly delegated discretionary authority. *See Allison*, 2005 WL 1457636, at * 8. Under these circumstances, LINA's denial of Plaintiff's claim is not entitled to deferential review. Accordingly, review of LINA's denial of Plaintiff's claim here must be undertaken utilizing a *de novo* standard.

### C.     Plaintiff's Eligibility for Benefits Under the Accident Plan

Under the *de novo* standard of review, the Court considers the relevant documents in the record to determine the proper interpretation of the disputed provisions in the Plan. *See Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 427 (S.D.N.Y. 2003); *see also Allison,* 2005 WL 145736, * 11 (E.D.N.Y. Feb. 11, 2005). The "presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'" *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (quoting *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir. 1997)). "To the extent that the disputed provision is unambiguous, 'an ERISA plan must be interpreted and enforced in accordance with its plain meaning.'" *Rubio*, 254 F. Supp. 2d at 427 (quoting *Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002)). However, ambiguities in an ERISA plan must be construed against the employer, as the drafter of the disputed document, in accordance with trust and contract principles of construction. *See Masella v. Blue Cross & Blue Shield of*

*Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991). Moreover, the burden is on Defendants to prove

that Plaintiff's interpretation of the Plan is unreasonable. *Rubio*, 254 F. Supp. 2d at 428 (citing

*Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 739 (2d Cir. 2001)).

### 1. Analysis of the SPD and Blanket Accident Policy

The SPD provides:

> If while traveling on Company business you have an accident that
> results in death, dismemberment, paralysis or total and permanent
> disability, your policy provides for payment of benefits to you or your
> beneficiary. To be covered by the Plan, your death, dismemberment
> or paralysis must result within one year from the date of the accident.
> Total and permanent disability must begin within 180 days of the
> accident and continue for at least 12 consecutive months.

AR at 0486. The SPD further provides that "[n]o benefits from this Plan are available to you if

you are injured or killed in these situations:

- Commuting between your home and place of employment
- Not engaged in the performance of your job
- Driving or riding as a passenger in any vehicle engaged in a race or speed test
- Intentionally self-inflicted injuries or suicide
- As a result of either a declared or undeclared war in the United States
- Serving on full-time active duty in the armed forces
- Piloting a private aircraft or traveling as a passenger in a private aircraft
- As a result of an illness, disease, pregnancy, child-birth, miscarriage or any bacterial infection..

AR at 0489 (the "SPD Exclusions").[10]

By way of comparison, the Blanket Accident Policy (pursuant to which benefits are paid

by LINA under the Accident Plan) states that a beneficiary will receive a Permanent Total

---

[10]    The policy provides more exclusions than listed here, but neither Plaintiff nor Defendants
address them and the Court deems them not relevant for purposes of these motions.

Disability Benefit (which, in this case would be a lump sum payment of a maximum of

$400,000) if:

> a) a person is injured by one of the types of accidents described in
> Schedule IV, which happens while he is covered for this benefit; and
>
> b) he becomes totally disabled as a direct result, and from
> no other cause, within 30 days of the accident; and
>
> c) he remains totally disabled for 12 straight months; and
>
> d) he is then permanently and totally disabled.
>
> . . . .
>
> A person will be deemed "totally disabled" if he can not do all the
> substantial and material duties of his type of work. He will be
> deemed "permanently and totally disabled" if he is not able to do any
> work for which he is or may become qualified by reason of his
> education, experience or training; and if he is not expected to be able
> to do any such work for the rest of his life.

Kampfer Aff'n, Ex. B at 7; AR at 0454. The Blanket Accident Policy specifies "Exclusions,"

where LINA "will not pay benefits for loss caused by or resulting from:

> a) Suicide, attempted suicide, or whenever a covered a person
> injures himself on purpose, while sane or insane.
> b) War or acts of war, whether or not declared (except to the
> extent provided for in a separate section)
> c) Injury while a covered person is on full time active duty in any
> armed forces.
> d) Taking part in a felony.
> e) Travel or flight in any spacecraft; or flight in any aircraft
> (except to the extent provided for in a separate section).
> f) Any bacterial infection that was not caused by an accidental cut,
> wound or food poisoning."

(The "Policy "Exclusions"). Kampfer Aff'n, Ex. B at 8; AR at 0455. The Blanket Accident

Policy then provides: "This is an accident only policy. We will not pay benefits for loss caused

by or resulting from illness, disease, or bodily infirmity." AR at 0455.

It is undisputed that, following the bowling accident at issue here, Plaintiff became "totally disabled" within 30 days, that he remained totally disabled for 12 straight months, or that he then became "permanently and totally disabled." Thus the issues to be decided here are (1) whether the bowling accident occurred while Plaintiff was "covered for this benefit," and (2) whether Plaintiff became totally disabled "as a direct result, and from no other cause." Accordingly, the Court examines each of these issues in turn.

### a.    Is the Bowling Accident A Covered Event Under the Plan ?

Under a provision entitled "24 Hour Coverage While Traveling On Business Away From The Premises of the Policy Holder" (the "24 Hour Coverage Provision"), the Blanket Accident Policy provides that benefits will be paid "for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

> a) away from your premises in his city of permanent assignment; and
> b) on business for you, and in the course of your business.
> All such trips must be authorized by you.

> This coverage does not include:
> a) commuting between the covered person's home and place of work; or
> b) during personal deviations made by the covered person [*sic*]"

Kampfer Aff'n, Ex. B at 9; AR at 0456.

Plaintiff argues that the bowling accident during UPS's Supervisor Appreciation Day at Sports Plus on April 14, 2000 falls under this provision for the following reasons. First, the accident occurred at Sports Plus and thus was away from UPS's premises in Plaintiff's city of permanent assignment. Pl.'s Mem. at 13; Pl.'s Reply Mem. at 3. Second, the accident occurred "on business for" UPS and "in the course of [UPS's] business" because "while technically the business of UPS is shipping packages, on April 14, 2000, the course of business for UPS

employees was to attend Supervisor Appreciation Day." *Id*. Third, according to Plaintiff, the fact that the trip was authorized by UPS is demonstrated by employees mandatory attendance at the event, which was conducted during business hours and by the fact that Plaintiff's employer threatened to fire him if he did not attend. Pl.'s Mem. at 13; Pl.'s Opp'n at 11. In addition, Plaintiff points to the fact that he was awarded Workers' Compensation benefits in further support of his position that the bowling accident "occurred in the course of [Plaintiff's] employment (*e.g.*, in the course of UPS's business) . . . ." Pl.'s Reply Mem. at 4; Pl.'s Mem at 14 (citing N.Y. Workers' Comp. Law § 10 (workers' compensation is provided for "disability or death from injury *arising out of or in the course of employment* . . . ." (emphasis added)). Finally, Plaintiff asserts that the bowling event took place during company business hours, Plaintiff's attendance was mandatory, and he was paid for the time spent at Sports Plus. *Id*. Neither side contends that this was any type of "personal deviation." Defendants argue "there is nothing in the record, besides the Plaintiff's self serving statements, which are outside the scope of the administrative record, substantiating the claim that Plaintiff would be fired had he not attended the outing." Defs.' Reply Mem. at 12, n.4 Whether Plaintiff was threatened with his job if he did not attend this function is not germane to the issues here. The fact is that Plaintiff, along with others, did attend the event, and did so during normal work hours.

The SPD provides that benefits will be paid where the accident "results from hazards during travel on Company business." AR at 0486. Plaintiff notes that the SPD does not require that the accident "occur while traveling on the company's typical or normal course of business" and on the day of the accident "the business for UPS employees was to relax and enjoy themselves on Supervisors' Appreciation Day." Pl.'s Opp'n at 11.

On the other hand, Defendants quote the same language in the SPD to support their position that Plaintiff was not traveling on company business when the accident occurred because "UPS is not in the business of bowling." Defs.' Mem. at 14; Defs.' Reply Mem. at 12. In addition, Defendants note that "[t]he clear intent of the [Plan] is to protect [UPS workers] from the inherent dangers involving traveling on UPS' business. This Plan's purpose was not to protect UPS employees from dangers that might occur at bowling outings." *Id.* Defendants do not cite to any language in the either SPD or the Blanket Accident Policy, nor anything in the Administrative Record, to support this position. The Court finds that Defendants take too narrow a view regarding the policy language.

The Court must interpret the disputed terms of the Plan and Blanket Accident Policy to determine whether Plaintiff was "covered" when the bowling accident occurred. The Court looks to whether a reasonable finder of fact can conclude that Plaintiff was "on business . . . and in the course of [UPS's] business" at the time the bowling accident occurred. *See Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003) (deciding this issue under an ERISA plan containing language identical to the 24 Hour Coverage Provision of the Blanket Accident Policy in the instant case). In order to make this determination, the Court applies the "familiar rules of contract interpretation in reading an ERISA plan." *Id.* (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 103-04 (2d Cir. 2002) (citation and parenthetical omitted)). The terms in the Plan must be construed in accordance with the reasonable expectations of the insured. *See Lifson*, 333 F.3d at 353 (citing cases). The Court construes ambiguities against the drafter and in favor of the insured. *See Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002) ("[A]bsent evidence indicating the intention of the parties, any ambiguity in the language used in an ERISA plan should be

construed against the interests of the party that drafted the language."). The interpretation chosen by the insurer must be "the only construction which may fairly be placed on [the words]." *Lifson*, 333 F.3d at 352 (quoting *Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 840 (2d Cir. 1981) (internal quotation and citation omitted).

Based on the plain meaning of the terms of the Plan and the Blanket Accident Policy, the Court finds that a company-sponsored event, such as the UPS Supervisors' Appreciation Day at which the bowling accident occurred, is not *per se* excluded from Long Term Benefits Coverage under the Plan. As noted above, the SPD specifies six Exclusions in which "[n]o benefits from this Plan are available to you if you are injured or killed." AR at 0489. The only SPD Exclusion of any potential applicability here is for accidents occurring while the insured is "[n]ot engaged in the performance of [his] job." For the reasons discussed below, the Court finds that Plaintiff was in fact engaged in the performance of his job while attending the Supervisor's Appreciation Day. This conclusion is supported by the fact that (1) the Supervisors' Appreciation Day event was sponsored by UPS; (2) the event took place during normal business hours; (3) Plaintiff, like other employees, was required to attend; and (4) Plaintiff was paid his regular wages for the time spent at the event.

The Blanket Accident Policy also lists six exclusions which are similar but not identical to those contained in the SPD, none of which are relevant here. The Policy then provides: "This is an accident only policy. We will not pay benefits for loss caused by or resulting from illness, disease, or bodily infirmity." Kampfer Aff'n, Ex. B at 8. Defendants have not asserted that Plaintiff's disability was caused by or resulted from an "illness, disease, or bodily infirmity," thus the Court will not address that exclusion.

Because the circumstances in which the bowling accident occurred are not plainly excluded from coverage under the Plan, the Court next turns to interpreting the term "on business . . . and in the course of . . . business." These terms have a defined meaning and are not ambiguous. In *Lifson*, the Second Circuit examined whether the accident at issue, which occurred while Plaintiff was driving home from work but was "on-call," was covered by an ERISA plan with language identical to the 24 Hour Coverage Provision of the Blanket Accident Policy at issue here. The Second Circuit reversed the grant of summary judgment in the defendant insurance company's favor on the grounds that "a reasonable finder of fact could have concluded that [Plaintiff's] journey home was 'on business . . . and in the course of . . . business' simply because it benefitted the economic interests of her employer." *Lifson*, 333 F.3d at 352 (citing cases).[11] Thus, Plaintiff can satisfy the "on business" requirement of the Plan if he can establish that the UPS Supervisors' Appreciation Day, at which the bowling accident occurred, "benefitted the economic interests" of UPS.

In construing this term in accordance with the reasonable expectations of the insured, and deciding any ambiguity against Defendants, as the Court must, I find that it is reasonable to conclude that Plaintiff attended the Supervisors' Appreciation "on business . . . and in the course

---

[11]     *Lifson* is factually distinct from the instant case. In *Lifson*, the insured, who was a software engineer, was fatally struck by a car while crossing the street after leaving her employer's office, en route to up her children from daycare and then return home. In finding that the insured was "on business for [her employer], and in the course of [her employer's] business," and not on a personal deviation, at the time of the accident, the Second Circuit relied primarily on the fact that at her home she could respond quickly to computer service calls by way of a modem attached to her home computer (time of response was one of the ways insured was evaluated by her employer), and that she was actually expecting several such calls on the night of her death. *Lifson*, 333 F.3d at 353-55. Moreover, the court stressed that the employer benefitted economically from having its engineers work "on-call," which enabled it to reduce the number of necessary paid employees. *Id.* at 354-55.

of [UPS'] . . . business" because this event benefitted UPS's economic interests. Although the employees were not engaged in shipping packages that day, presumably UPS held this event because it had determined, for example, that such an event fosters an improved working environment, increases employees' morale and camaraderie, motivates performance, and ultimately enhances productivity and good will toward the Company, all of which benefit UPS's business. In addition, as noted above, Supervisors' Appreciation Day was sponsored by UPS and Plaintiff was required to attend. Thus, it is reasonable to conclude that Plaintiff was attending the event to fulfill his employment responsibilities and in furtherance of UPS's business. Moreover, the event took place during regular business hours and Plaintiff was paid in accordance with his usual work day.

Significantly, neither party cites a single case to support their respective positions on this point. Moreover, Defendants provide only conclusory statements, and do not refer to any evidence in the record to support their interpretation of the phrase "on business . . . and in the course of [UPS's] business." Thus, Defendants have not fulfilled their burden of showing that, in denying Plaintiff's application for benefits, LINA's interpretation of the Plan was "the only construction which may be fairly placed on [the words]." *Lifson*, 333 F.3d at 352. Accordingly, the Court concludes that Plaintiff's bowling accident occurred while Plaintiff was "on business . . . and in the course of [UPS's] business . . ." and, consequently, the bowling accident is  a covered event under the Policy.

**b. Total Disability As A Direct Result Of, And From No Other Cause**

In the March 8, 2004 letter denying Schroeher's claim for benefits under the Accident Plan, LINA wrote:

35

We have reviewed the documents detailed above and the claim file as a whole in making this determination. According to the consultations, test results and assessments we have received, you have been treating for low-back radicular symptoms since at least 1998. There are a few assessments which indicate that the start of your lumbar condition was as early as 1991 or 1993. It is documented in several reports that you injured your back lifting a dolly in 1998. It is also confirmed that you continued working after each of these instances.

As stated above, in order for your claim to be approved, you must satisfy all of the policy provisions. There is no evidence to support that the activity on April 14, 2003 [*sic*] was the sole cause of your current medical condition. As such, there is no exact date of accident in relation to your condition. Moreover, there is evidence to support that the reported activity of April 203 [*sic*] caused an exacerbation of a low-back pain syndrome that you have had since at least the mid-1990s. Under the circumstances, no benefits can be paid under policy ABL 654287.

AR at 301. Likewise, in their Cross-Motion, Defendants argue that Plaintiff is not entitled to benefits under the Plan because his "claimed injuries are the result of prior back injuries and exacerbations of those injures [*sic*]. The accident at issue was not the cause of his back injury or degenerative back condition." Defs.' Mem. at 11; *see also* Defs.' Reply Mem. at 8. Defendants then discuss the reports of several doctors, contained in the Administrative Record, who saw Plaintiff after the bowling accident. Many of these reports note Plaintiff's prior back problems and/or injuries which, by some accounts, date back to 1991. Defs.' Mem. at 11-12; Defs.' Rule 56.1 Counter-Stmt. ¶¶ 24-34; Defs.' Rule 56.1 Stmt. ¶¶ 15-32.

Plaintiff, however, does not dispute that he had back problems prior to the bowling accident. Pl's. Opp'n at 7. Rather, Plaintiff takes issue with LINA's "misconstr[ual]" of the Plan's language, as set forth in the March 8, 2004 denial letter. Pl's Mem. at 14-15. Plaintiff argues that, contrary to the language in LINA's denial letter,

> [t]he Policy does not state that the accident has to be the sole cause of a claimant's medical condition or that the medical condition has to result directly from the accident. In fact, the term 'medical condition' is not even defined in the policy.

*Id.* at 15. Plaintiff maintains that he is entitled to benefits under the Plan because, in accordance with the terms of the Plan, he became "totally disabled as a direct result, and from no other cause, other than the accident." *Id.* It is therefore "irrelevant that [Plaintiff] may have suffered from some back problems prior to" the bowling accident because, before that incident, he worked for UPS full time and without any type of medical restriction. Following the bowling incident, however, he was unable to return to work in his own or any occupation. *Id.* Thus, Plaintiff asserts, "a straight reading of the Policy language makes it clear that it was the accident that occurred on April 14, 2000, that directly and solely caused Mr. Schroeher's total disability." *Id.* Plaintiff also discusses the various reports of doctors who treated Plaintiff after the bowling accident, which, Plaintiff claims, show that at the time of the accident, his prior back pain had improved and the bowling accident constituted a new injury, as a result of which he was unable to return to work. Pl.'s Mem. at 4-5; Pl.'s Opp'n at 8-11[12]; Pl.'s Rule 56.1 Stmt. ¶¶ 24-34; Pl.'s Rule 56.1 Counter-Stmt. ¶¶ 15-32.

In addition, Plaintiff argues that "Defendant is trying to read a pre-existing condition limitation into the policy where there is none." Pl.'s Opp'n at 7; *see also* Pl.'s Mem. at 16-17. In support of that argument, Plaintiff relies upon *Arthurs v. Metropolitan Life Insurance Company*,

---

[12] With regard to the medical documentation cited by Defendants in support of their Cross-Motion, Plaintiff states: "Defendants left out relevant portions of certain reports in an effort to make it appear like Mr. Schroeher's prior back injury was a cause of his total disability. This is simply not the case." Pl.'s Opp'n at 8. In response, the Court notes that it reviewed the entire Administrative Record, including all of the medical reports, in an effort to understand and evaluate the totality of circumstances as they shape the issues to be determined here.

760 F. Supp. 1095 (S.D.N.Y. 1991), in which the District Judge adopted the Fourth Circuit's rule

that, in the context of an ERISA plan with language substantively similar to that at issue here,

> [a] pre-existing infirmity or disease is not to be considered as a cause
> unless it substantially contributed to the disability or loss. . . . [A]
> "predisposition" or "susceptibility" to injury, whether it results from
> congenital weakness or from previous illness or injury, does not
> necessarily amount to a substantial contributing cause. A mere
> "relationship" of undetermined degree is not enough . . . We think
> [this rule] gives effect to the [Firestone] Court's admonition to
> promote the interests of the employees and beneficiaries in employee
> benefit plans.

*Arthurs*, 760 F. Supp. at 1100 (quoting *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794

(4th Cir. 1990) (holding coverage for losses "resulting directly and independently of all other

causes from bodily injury caused by accident" does not exclude preexisting infirmity or disease

unless the infirmity "substantially contributed to disability or loss")). The court in *Arthurs*

further noted that the rule that a pre-existing infirmity or disease can only be considered a cause

if it "substantially contributed" to the disability "is similar to that enunciated by the New York

Court of Appeals in" *Silverstein v. Metropolitan Life Insurance Co.,* 254 N.Y. 81, 171 N.E. 914

(1930):

> If there is no active disease, but merely a frail general condition, so
> that powers of resistance are easily overcome, or merely a tendency
> to disease which is started up and made operative, whereby death
> results, then there may be recovery even though the accident would
> not have caused that effect upon a healthy person in a normal state.

*Arthurs*, 760 F. Supp. at 1100 (quoting *Silverstein,* 254 N.Y. at 85, 171 N.E. at 914 (citation

omitted)).

As Plaintiff correctly notes, although the Court's decision in *Arthurs* is not binding on

this Court, it is instructive. The court in *Arthurs* was faced with determining Plaintiff decedent's

eligibility for benefits under an ERISA plan where the Plan stated that benefits would be paid when the death "is not caused in whole or in part from disease, bodily or mental infirmity. . . ." *Arthurs,* 760 F. Supp. at 1097. The defendant in *Arthurs* argued that plaintiff, who had died following a heart attack, died "as a result of the natural and spontaneous progression of the coronary artery disease and his work had no effect upon his condition[,]" which was the conclusion of the doctor who examined the medical file, including the death certificate and autopsy report. *Id.* On the other hand, decedent's wife (the beneficiary under the Plan) "had presented some evidence to show that her husband's fatal heart attack was brought on by the extremely high temperature in the confined space of the vault, and that those conditions were not the usual conditions under which he was expected to wok." *Id.* at 1101. The court in *Arthurs* also found that defendant "has failed to offer any evidence to establish that the phrase 'occlusive coronary arteriosclerosis' as used in both the autopsy report and the death certificate necessarily signifies that Mr. Arthurs' death was in fact due to a pre-existing disease or bodily infirmity." *Id.* In drawing this conclusions, the court held that there were factual disputes and denied defendant's motion for summary judgment. *Id.* at 1100-01.

Similarly instructive, though not binding on this Court, is the Sixth Circuit's decision in *Tolley v. Commercial Life Insurance. Co.*, 14 F.3d 602, 1993 WL 524284, at * 2 (6th Cir. Dec. 17, 1993) (per curiam).[13] In *Tolley*, the ERISA plan at issue provided that losses must result "directly and independently of all other causes from bodily injury. . . ." The district court granted summary judgment for defendant insurance company and against one of the plaintiffs (in these consolidated cases up on review under ERISA) because it found that his preexisting back

---

[13]       *Tolley* is an unpublished opinion of the Sixth Circuit Court of Appeals.

condition constituted a "bodily infirmity" which contributed to his disability and that "under the plain language of the policy, his injury of September, 1988, was not caused 'directly and independently of all other causes' by his lifting of the heavy object."  In reaching its conclusion, the district court relied on the deposition testimony of plaintiff's orthopedic surgeon in which he stated that there was a "reasonable probability" that plaintiff's "disc was in a weakened condition and vulnerable to this type of injury."  *Id.* at * 3.  The doctor also noted that the x-rays and CT scans of plaintiff's back before and after the accident were essentially the same. Finally, the doctor stated that although plaintiff's return to a full range of activity after his earlier surgery created some inferences favorable to plaintiff's claim, the underlying weakness was not eliminated.  *Id.*

The Sixth Circuit, however, found that although this doctor's testimony would support the district court's finding, the record was also clear that after plaintiff's surgery for a ruptured disc, he returned to work without restrictions and worked until he was injured in an auto accident. *Id*. at * 4.  Plaintiff thereafter returned to work again, without restrictions, and worked for over one and one-half years until the accident at issue in *Tolley* occurred.  After each previous injury plaintiff received clearance from a company doctor to return to his job without restriction. The Sixth Circuit went on to note that

> [i]mplicit in the district court's holding is the legal conclusion that the releases in no way insulated the first injury from the second or the second from the third. Once a doctor permitted plaintiff to engage in the very work that resulted in his injury, we decline to find that either of the previous injuries constituted a "physical infirmity."

*Id*.  In dealing with the second of the two consolidated cases also involving another plaintiff with previous back problems, the Sixth Circuit concluded that "the mere  occurrence of previous back

injuries cannot be equated with the existence of a preexisting infirmity. We therefore conclude that the records presented to the administrator are inadequate to support a finding that . . . plaintiff suffered a preexisting bodily infirmity." *Id.* Accordingly, the case was remanded to the district court for further consideration.

The Sixth Circuit has also analyzed an ERISA plan with language nearly identical to that at issue in the instant case. In *Thiel v. Life Insurance Company of North America*, 271 Fed. Appx. 514, 2008 WL 852489 (6th Cir. Mar. 26, 2008), the ERISA plan provided benefits if a claimant was injured by a qualifying accident and "becomes totally disabled *as a direct result, and from no other cause*, within 365 days after the accident." *Thiel*, 271 Fed. Appx. at 517 (emphasis in original). The court determined that the "undisputed medical evidence" contained in the administrative record showed that plaintiff's pre-accident back problems had "substantially contributed to" his disability, and he was thus ineligible for benefits. *Id.* Significantly, the doctors' post-accident opinions showed that either his "pre-existing back problem substantially contributed to his disability or are consistent with that conclusion." One doctor concluded that "factors unrelated to the accident contributed at least 60 percent to the disability" and no doctor took a contrary view. *Id.* The court in *Thiel* distinguished the circumstances from *Tolley* on the grounds that in *Tolley*, "there was no indication that the plaintiff suffered from any symptoms in the year and a half leading up to his disabling injury or that his condition 'materially impaired [his] health.'" *Id.* at 518. In contrast, the court in *Thiel* concluded that there was "abundant evidence that [plaintiff] received ongoing treatment for serious back problems in the months leading up to the accident – problems that were similar in kind to his post-accident conditions[,] . . . and his pre-accident conditions . . . substantially contributed to his current disability." *Id.*

In the instant case, the Administrative Record contains several doctors' reports that refer to Plaintiff's previous back problems. However, there is no specific medical opinion proffered on the impact any previous injury may have had in *causing* Plaintiff's current disability. More specifically, there is no medical evidence one way or the other whether Plaintiff became *totally disabled* (as defined in the SPD) as a direct result of the bowling accident and from no other cause. In addition, the Administrative Record does not contain any relevant medical records from prior to the bowling accident which would enable this Court to analyze the circumstances in a manner similar to the courts in *Tolley* and *Thiel*. In fact, the only medical report from the period prior to the bowling accident on April 14, 2000 is a record from a doctor who treated plaintiff for an elbow injury in February 25, 2000, for which there is no showing of any relationship to Plaintiff's back problems. AR at 353; Defs.' Rule 56.1 Stmt. ¶¶ 18, 19.

Similar to the court's finding in *Tolley*, Plaintiff here asserts that prior to the bowling incident, he worked for UPS full time and without restrictions. Pl.'s Opp'n at 7. Defendants have not controverted that assertion. Thus, it is reasonable to conclude that whatever back problems Plaintiff may have had prior to the bowling incident, such problems did not prevent him from performing his duties as a Feeder On-Road Supervisor/Manager and Feeder Dispatch Supervisor/Manager. Following the injury, however, Plaintiff became unable to fulfill his employment duties in those jobs or in any other role and has not been able to return to work. *Id.* at 7-8. In light of these facts, it is also reasonable to conclude that the bowling accident played a substantial role in rendering Plaintiff "totally disabled" and subsequently "permanently and totally disabled," as those terms are defined in the SPD.

This, however, is not the end of the story. The Administrative Record contains some evidence indicating that Plaintiff's prior injuries were, at least at certain times, fairly serious. Yet, the evidence in the record is insufficient to enable the Court to determine whether Plaintiff's prior back problems "substantially contributed" to his current disability, or whether Plaintiff became disabled, and permanently and totally disabled, as a direct result of the bowling accident, and from no other cause.

For the foregoing reasons, the Court finds that further inquiry is necessary, including, most likely, additional medical evidence and testimony by medical experts, before the Court is in a position to render a decision on whether Plaintiff became totally disabled as a direct result of the bowling accident, and from no other cause. Accordingly, the Court finds that there exists an issue of material fact on this point, thereby precluding summary judgment.

## VI.  **CONCLUSION**

For all of the foregoing reasons, I respectfully recommend to Judge Feuerstein that Plaintiff's Motion for Summary Judgment be DENIED with respect to all claims and that Defendants' Cross-Motion for Summary Judgment also be DENIED with respect to all claims.

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a), (e).  Such objections shall be filed with the Clerk of the Court via ECF.   A courtesy copy of any objection filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein and to the chambers of the undersigned .  Any requests for an extension of time for filing**

objections must be directed to Judge Feuerstein prior to the expiration of the ten (10) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
      March 21, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge